IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| OTTAMISE EZEKIEL<br>121 Fountain Avenue<br>Trenton, NJ 08618<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>DENTAL HEALTH ASSOCIATES, P.A.<br>320 South Main Street<br>Phillipsburg, NJ 08865<br><br>　　　　　　Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br>NO.: _____<br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Ottamise Ezekiel (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. Plaintiff has initiated this action to redress violations by Dental Health Associates, P.A. (*hereinafter* "Defendant") of Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000e, *et. seq.*), the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq.*), the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §2601 *et seq.*), and the New Jersey Law against Discrimination ("NJ LAD"). As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. This Court may properly maintain jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over

Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co v. State of Washington*, 326 U.S. 310 (1945), and its progeny.

3. This action is initiated pursuant to a federal law. The United States District Court for the District of New Jersey has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

4. Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because Defendant resides in and/or conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing her Charge with the EEOC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

7. Plaintiff is an adult who resides at the above-captioned address.

8. Dental Health Associates, P.A. is a dental group with 10 locations throughout New Jersey, with a primary location at the above-captioned address.

9. At all times relevant herein, Defendant acted through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

11. Plaintiff is a black (African-American) female.

12. Plaintiff was employed by Defendant for approximately 6 years as a surgical technician, until her unlawful termination on or about July 2, 2021 (discussed further *infra*).

13. Plaintiff worked primarily out of Defendant's Hamilton, New Jersey office.

14. At the time of her termination, Plaintiff was primarily supervised by District Manager, Luis Martinez (*hereinafter* "Martinez").

15. While employed with Defendant, Plaintiff was a hard-working employee who performed her job well.

### -Race Discrimination-

16. Defendant's management and workforce was predominantly Caucasian and/or non-black.

17. Upon Plaintiff's observations and belief, Defendant's work environment has been disparate and unfairly harsh toward black employees. For example, but not intended to be an exhaustive list:

   a. Black employees were not given raises as often and were not as highly-compensated as Caucasian employees;

   b. Plaintiff and other black employees were required to travel more than Caucasian and/or non-black employees;

    c. Defendant's Caucasian and/or non-black management selectively enforced policies against Plaintiff and other black employees and issued them pretextual discipline; and

    d. At least one Caucasian co-worker made derogatory race-related comments to Plaintiff and other black employees, such as "I am sick of you people."

18. Plaintiff complained/objected to Defendant's management and HR about the aforesaid unfair treatment and racial comments leading up to her termination, but her concerns were ignored. Instead, Defendant's Caucasian and/or non-black management subjected her to increased hostility and animosity.

19. For example, on or about June 18, 2021, Martinez gave Plaintiff permission to go to Defendant's Lumberton office to transport surgical instruments for the Princeton and Delran New Jersey, locations.

20. Thereafter, on June 21, 2021, Plaintiff brought the instruments to the Princeton office, wherein she spoke with her Caucasian team member, Stacy (last name unknown, *hereinafter* "Stacy"). Plaintiff informed Stacy she would leave some of the surgical instruments at the Princeton office and take the remainder to Delran at the end of the day; Stacy acknowledged that she would be leaving and taking some of the instruments.

21. Nonetheless, at the end of the day, as Plaintiff was leaving, Stacy came to Plaintiff and asked to search her handbag, accusing her of "taking our instruments." When Plaintiff informed Stacy that these were the instruments that she had advised Stacy about that morning, Stacy then went around the entire office, loudly telling employees that Plaintiff was stealing instruments and that Plaintiff would not allow her to search Plaintiff's bag.

22. Despite the fact that Plaintiff was being treated differently than her Caucasian co-workers (who had never had their handbags searched when transporting tools to other locations) and made to feel like a criminal, Plaintiff sought out a manager and assured her that she had not taken any instruments that she had not brought with her from another of Defendant's locations and showed her the tools in Plaintiff's handbag. ***Only then*** was Plaintiff permitted to leave the Princeton location.

23. However, just a few days later, on or about June 24, 2021, Martinez called Plaintiff into a meeting with Stacy, another employee, and a Caucasian doctor, during which she was hostilely criticized and berated regarding the surgical tool incident on June 21, 2021 – despite that Martinez knew about and had authorized her to transport the surgical tools to multiple of Defendant's locations. Martinez sent Plaintiff home for the rest of the day.

24. Following the June 24, 2021 meeting, Plaintiff complained about the disparate and discriminatory way that she had been treated to HR, but her concerns were ignored.

25. Instead, Plaintiff was abruptly terminated just a few days later, on or about July 2, 2021, for purportedly being "disrespectful" to her Caucasian co-worker Stacy, even though Plaintiff had remained calm during her interaction with Stacy on June 21, 2021, while Stacy had yelled and informed other co-workers that Plaintiff was stealing surgical instruments – which was completely false.

26. Plaintiff believes and therefore avers that she was really terminated because of her race and/or in retaliation for her complaints of/objections to race discrimination.

### -Disability Discrimination/FMLA Violations-

27. In addition to the race discrimination and retaliation that Plaintiff was subjected to, she was also subjected to discrimination and retaliation because of her serious health conditions.

28. On or about January 10, 2021, Plaintiff was involved in a serious automobile accident, resulting in multiple injuries/serious health conditions (including several rib fractures and lung complications) for which she was initially hospitalized for approximately one week.

29. As a result of her aforesaid serious health conditions, Plaintiff suffered from pain, breathing difficulty, and mobility issues, which (at times) affected her ability to perform some daily life activities, including but not limited to bending, lifting, and working.

30. Despite her aforesaid serious health conditions and limitation, Plaintiff was still able to perform the essential duties of her job for Defendant; however, she did require reasonable medical accommodations at times.

31. For example, Plaintiff requested and was approved for FMLA leave from in or about January 11, 2021, until on or about March 9, 2021, to care for and treat for her aforesaid serious health conditions.

32. Throughout her aforesaid medical/FMLA leave, Plaintiff regularly kept Defendant's management and Human Resources ("HR") updated as to the status of her serious health conditions and continued need for medical leave.

33. In fact, on or about March 9, 2021, Plaintiff requested an extension of her medical leave, informing Defendant that she was being evaluated by her physician but would "definitely be out most of April." To which, Defendant's HR representative replied only, "Thank you, Ottamise."

34. Thereafter on or about April 22, 2021, Plaintiff emailed Defendant with a copy of her doctor's note clearing her to return to work full duty on May 3, 2021.

35. However, after notifying Defendant that she was cleared to return to work on May 3, 2021, Plaintiff was informed Defendant had filled her job position in its Hamilton, New Jersey

6

office, and she would instead be required to travel to ***three different locations*** in Princeton, Delran, and Robbinsville, New Jersey.

36. Upon Plaintiff's information and belief, she was the only one of Defendant's employees who had ever been required to travel to ***3 separate offices***, and she was singled out because of her aforesaid serious health conditions and/or her requests for reasonable accommodations (i.e., medical leave) for same.

37. Moreover, despite that Plaintiff had kept Defendant apprised of the status of her health conditions, Defendant failed to accommodate Plaintiff by failing to hold her position open in Defendant's Hamilton office ***for just an additional 3 weeks*** beyond her FMLA leave.

38. Additionally, upon Plaintiff's return from medical leave, the doctor that Plaintiff had worked for prior to her medical leave began to treat her in a hostile and harassing way and routinely talked down and/or yelled at her.

39. Leading up to her termination, Plaintiff complained to HR that the aforesaid instances of unfair treatment she was receiving were retaliation for taking medical leave for her aforesaid serious health conditions; however, her concerns were ignored.

40. Instead, Plaintiff was subjected to increased hostility, animosity, and disparate treatment, including but not limited to, being denied a raise that she had been promised prior to her medical leave.

41. Plaintiff was then terminated on or about July 2, 2021, in close proximity to her requests for/utilization of reasonable accommodations and her expressed concerns of disability discrimination and retaliation – for completely pretextual reasons (as discussed *supra*).

42. Plaintiff believes and therefore avers that she was subjected to a hostile work environment and terminated from Defendant because of: (1) her known and/or perceived health

7

problems; (2) her record of impairment; (3) her requested accommodations (which constitutes illegal retaliation); (4) her expressed concerns of disability discrimination and retaliation; and (5) Defendant's failure to properly accommodate her by failing to hold her position open and/or reinstate her to the same or similar position upon being released to return to work from her medical leave.

## COUNT I
## Violations of 42 U.S.C. Section 1981
### ([1] Race Discrimination; [2] Retaliation; and [3] Hostile Work Environment)

43. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

44. During Plaintiff's employment with Defendant, she was subjected to discrimination and a hostile work environment through disparate treatment, pretextual discipline, and demeaning and/or derogatory treatment because of her race.

45. Instead of investigating Plaintiff's aforesaid complaints of and/or objections to race discrimination, Defendant's management ignored them and left her legitimate concerns unresolved.

46. Plaintiff was ultimately terminated on or about July 2, 2021, for completely pretextual reasons.

47. Plaintiff believes and therefore avers that she was really terminated because of her race and/or her complaints of/objections to race discrimination.

48. These actions as aforesaid constitute unlawful discrimination, retaliation, and a hostile work environment under Section 1981.

## COUNT II
## Violations of Title V
### ([1] Race Discrimination; [2] Retaliation; and [3] Hostile Work Environment)

49. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

50. During Plaintiff's employment with Defendant, she was subjected to discrimination and a hostile work environment through disparate treatment, pretextual discipline, and demeaning and/or derogatory treatment because of her race.

51. Instead of investigating Plaintiff's aforesaid complaints of and/or objections to race discrimination, Defendant's management ignored them and left her legitimate concerns unresolved.

52. Plaintiff was ultimately terminated on or about July 2, 2021, for completely pretextual reasons.

53. Plaintiff believes and therefore avers that she was really terminated because of her race and/or her complaints of/objections to race discrimination.

54. These actions as aforesaid constitute unlawful discrimination, retaliation, and a hostile work environment under Title VII.

## COUNT III
## Violations of the New Jersey Law against Discrimination ("NJ LAD")
### ([1] Race Discrimination; [2] Retaliation; and [3] Hostile Work Environment)

55. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

56. Plaintiff reasserts each and every allegation from Count II, as such actions in this case constitute identical violations of the NJ LAD.

**COUNT IV**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;**
**[3] Hostile Work Environment; and [4] Failure to Accommodate)**

57. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

58. Plaintiff suffered from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities including, but not limited to bending, lifting, and working.

59. Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendant; however, Plaintiff did require reasonable medical accommodations at times.

60. Plaintiff required reasonable accommodations from Defendant, including but not limited to a medical leave of absence to care for and treat for her serious health conditions.

61. During Plaintiff's employment with Defendant, she was subjected to discrimination and a hostile work environment through disparate treatment, pretextual discipline, and demeaning and/or derogatory treatment because of her health conditions and her requests for medical accommodations.

62. Instead of investigating Plaintiff's aforesaid complaints of disability discrimination and retaliation, Defendant's management ignored them and left her legitimate concerns unresolved.

63. Despite that Plaintiff kept Defendant apprised of the status of her health conditions during her medical leave, Defendant failed to accommodate Plaintiff by failing to hold her position open and/or failing to reinstate her to her same of similar position upon being released to work from her medical leave.

64. In close proximity to her aforesaid complaints of disability discrimination and retaliation, Plaintiff was abruptly terminated on or about July 2, 2021, for pretextual reasons.

65. Plaintiff believes and therefore avers that she was subjected to a hostile work environment and terminated from Defendant because of: (1) her known and/or perceived health problems; (2) her record of impairment; (3) her requested accommodations (which constitutes illegal retaliation); (4) her expressed concerns of disability discrimination and retaliation; and (5) Defendant's failure to properly accommodate her by failing to hold her position open and/or failing to reinstate her to the same or similar position upon being released to return to work from her medical leave (set forth *supra*).

66. These actions aforesaid constitute violations of the ADA.

## COUNT V
### Violations of the New Jersey Law Against Discrimination ("NJ LAD")
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Hostile Work Environment; and [4] Failure to Accommodate)

67. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

68. Plaintiff reasserts each and every allegation from Count IV, as such actions in this case constitute identical violations of the NJ LAD.

## COUNT VI
### Violations of the Family and Medical Leave Act ("FMLA")
(Retaliation & Interference)

69. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

70. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

71. Plaintiff requested leave for medical reasons from Defendant, her employer, with whom she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

72. Plaintiff had at least 1,250 hours of service with Defendant during her last full year of employment.

73. Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

74. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

75. Plaintiff requested and/or utilized FMLA leave in close proximity to her termination.

76. Defendant committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising her FMLA rights and/or for taking FMLA-qualifying leave; (2) by considering Plaintiff's FMLA leave needs in making the decision to terminate her; (3) terminating Plaintiff to intimidate her and/or prevent her from taking FMLA-qualifying leave in the future; (4) by making negative comments and/or taking actions towards her that would dissuade a reasonable person from exercising her rights under the FMLA; and (5) failing to reinstate Plaintiff to the same or similar position upon being released to return to work from her FMLA leave.[1]

77. These actions as aforesaid constitute violations of the FMLA.

---

[1] *See e.g. Keim v. AMTRAK*, 2007 U.S. Dist. LEXIS 54200 (E.D Pa. 2007)(even where an employee is given 12 weeks of FMLA leave eliminating an interference claim, it constitutes unlawful retaliation to deny him or her reinstatement to his prior role where it was feasible).

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

      A.      Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

      B.      Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

      C.      Plaintiff is to be awarded punitive and liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

      D.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

      E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

      F.      Plaintiff is to be awarded any and all statutory enhancements available as a matter of law.

      G.      Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

                         Respectfully submitted,

                         **KARPF, KARPF & CERUTTI, P.C.**

By:     _____

                         Ari R. Karpf, Esq.
                         3331 Street Rd.
                         Two Greenwood Square, Suite 128
                         Bensalem, PA 19020
                         (215) 639-0801

Dated: November 17, 2021